# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MAGDALENA OCHOA, )

Plaintiff, )

vs. )

MARY E. PETERS, SECRETARY OF THE )
DEPARTMENT OF TRANSPORTATION, )

Defendant. )

FILED: AUGUST 19, 2008
08CV4712
No: JUDGE COAR
MAGISTRATE JUDGE SCHENKIER
YM

**JURY DEMAND**

## AS AND FOR A FIRST COUNT OF ACTION
### (Title VII- NATIONAL ORIGIN DISCRIMINATION)

### Nature of the Action

1. MAGDALENA OCHOA, ("OCHOA") brings this action under Title VII of the Civil Rights Act of 1964 and as amended by inter alia, the Civil Rights Act of 1991, 42 U.S.C.A. §§ 2000e et seq., ("ACT"). venue jurisdiction under 28 U.S.C.A. § 1343 (4) and 42 U.S.C.A. § 2000e-5(f), for DEPARTMENT OF TRANSPORTATION ("DOT") having subjected OCHOA to National Origin discrimination by failure to treat her the same as other non-Mexican employees despite OCHOA's repeated complaints about same.

2. OCHOA, is an adult Mexican working in a racially diverse office..

### PARTIES

3. OCHOA is an adult person and a resident of Cook County, State of Illinois.

4. OCHOA is an employee of FEDERAL AVIATION ADMINISTRATION (FAA), which is a Department of DOT.

5. At all times relevant, DOT has been and is a Federal Agency of the Government and MARY E. PETERS, is the Secretary of Transportation of DOT.

6. DOT is an employer within the meaning of the Civil Rights Act and 42 U.S.C. 2000(e) *et seq.*, and has been at all times material to the allegations herein.

## FACTUAL BASIS

7. That OCHOA was treated differently than non-Mexicans in the handling of any work of her complaints such as:

    A. In January of 2007, OCHOA's job title was changed from Program Manager to Program Coordinator thereby demoting her;

    B. In January of 2007, OCHOA's her supervisor "targeted her telecommuting privileges and thereafter her telecommuting privileges were terminated;

    C. In March of 2007, OCHOA's supervisor directed her to relocate from her desirable work location to a less desirable work location;

    D. Since February of 2007, and continuing, OCHOA's supervisor has ignored all requests by her for training and re-training; and

    E. OCHOA in doing I-band work was receiving unequal pay for at H-bank pay.

8. Further, DOT and FAA by its action or inactions of its agents based upon OCHOA's complaints in the work place, caused and created a hostile work environment which unreasonably interfered with the terms and conditions of OCHOA's employment and OCHOA's performance in her job, based upon her National Origin. All in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-c et seq; as amended by inter alia the Civil Rights Act of 1991.

9. DOT's and FAA's violation of the Civil Rights Act of 1964 has proximately caused OCHOA to suffer damages.

10. The FAA's violation of OCHOA rights was willful.

11. By reason of the National Origin discrimination of FAA, OCHOA has suffered a loss of earnings and benefits, in addition to suffering great pain, humiliation and mental anguish, all to her damage.

12. Plaintiff filed a discrimination charge against Defendant with the Equal Employment Opportunity Commission Office of Federal Operations (EEO). That charge was timely filed under the internal policy and procedures of DOT and after filing went through various stages of litigation.

13. On May 22, 2008, Plaintiff was sent a notice from the DOT of her right to bring this action (see Exhibit "A"), and Plaintiff timely filed this action.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Title VII-RACE DISCRIMINATION)

### Nature of the Action

14. This is an action under Title VII of the Civil Rights Act of 1964 and as amended by inter alia, the Civil Rights Act of 1991, for the Defendant, DOT and FAA having subjected Plaintiff, OCHOA to racial discrimination by failure to treat her the same as other Hispanic employees despite OCHOA'S repeated complaints about same.

15. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as more fully set forth herein.

16. Defendant by its action or in actions of its agents treated OCHOA differently than non-Hispanics in the handling of her work environment complaints such as:

      A. In January of 2007, OCHOA's job title was changed from Program Manager to Program Coordinator thereby demoting her;

      B. In January of 2007, OCHOA's her supervisor "targeted her telecommuting privileges and thereafter her telecommuting privileges were terminated;

      C. In March of 2007, OCHOA's supervisor directed her to relocate from her

3

desirable work location to a less desirable work location;

    D. Since February of 2007, and continuing, OCHOA's supervisor has ignored all requests by her for training and re-training; and

    E. OCHOA in doing I-band work was receiving unequal pay for at H-bank pay.

Management failed to take any corrective action for OCHOA because she is Hispanic. All in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-c et seq; as amended by inter alia the Civil Rights Act of 1991.

17. By reason of the racial discrimination of DOT, OCHOA has suffered a loss of earnings and benefits, in addition to suffering great pain, humiliation and mental anguish, all to her damage.

18. Further, said action on the part of the Defendant was done with malice and reckless disregard for Plaintiffs' protected rights.

19. On May 22, 2008, Plaintiff was sent a notice from the DOT of her right to bring this action (see Exhibit "A"), and Plaintiff timely filed this action.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Title VII- SEX DISCRIMINATION)

### Nature of the Action

20. This is an action under Title VII of the Civil Rights Act of 1964 and as amended by inter alia, the Civil Rights Act of 1991, for the Defendant, DOT and FAA having subjected Plaintiff, OCHOA to sex discrimination by failure to treat her the same as other male employees despite OCHOA'S repeated complaints about same.

21. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as more fully set forth herein.

### FACTUAL BASIS

4

22.    That OCHOA was treated differently than males in the handling of any work environment complaints such as:

> A. In January of 2007, OCHOA's job title was changed from Program Manager to Program Coordinator thereby demoting her;
>
> B. In January of 2007, OCHOA's her supervisor "targeted her telecommuting privileges and thereafter her telecommuting privileges were terminated;
>
> C. In March of 2007, OCHOA's supervisor directed her to relocate from her desirable work location to a less desirable work location;
>
> D. Since February of 2007, and continuing, OCHOA's supervisor has ignored all requests by her for training and re-training; and
>
> E. OCHOA in doing I-band work was receiving unequal pay for at H-bank pay.

Management failed to take any corrective action for OCHOA because she is a female.

23. Further, DOT and FAA by its action or inactions of its agents based upon OCHOA's complaints in the work place, caused and created a hostile work environment which unreasonably interfered with the terms and conditions of OCHOA's employment and OCHOA's performance in her job all because of her sex. All in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-c et seq; as amended by inter alia the Civil Rights Act of 1991.

24.  DOT's and FAA's violation of the Civil Rights Act of 1964 has proximately caused OCHOA to suffer damages.

25.  The FAA's violation of OCHOA rights was willful.

26. By reason of the sex discrimination of FAA, OCHOA has suffered a loss of earnings and benefits, in addition to suffering great pain, humiliation and mental anguish, all to her damage.

27. Plaintiff filed a discrimination charge against Defendant with the Equal Employment Opportunity Commission Office of Federal Operations (EEO). That charge was timely filed under the internal policy and procedures of DOT and after filing went through various stages of litigation.

28. On May 22, 2008, Plaintiff was sent a notice from the DOT of her right to bring this action (see Exhibit "A"), and Plaintiff timely filed this action.

## AS AND FOR A FOURTH CAUSE OF ACTION
## (AGE DISCRIMINATION IN VIOLATION TO THE ADEA)

29. OCHOA repeats and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

## JURISDICTION AND VENUE

30. Plaintiff brings this action for benefits under the Age Discrimination in Employment Act of 1967 (hereinafter sometimes referred to as the ADEA), 29 U.S.C. § 621-634, under the specific provisions of the Age Discrimination in Employment Act, viz. 29 U.S.C. § 626(c).

31. Jurisdiction of this action is conferred upon the Court by Section 7(b) of the Age Discrimination in Employment Act, (29 U.S.C. § 626 (b) and Venue 28 U.S.C. § 1331.

32. The employment practices hereafter alleged to be unlawful were and are now being committed in the Northern District of Illinois, Eastern Division.

## STATEMENT OF FACT

33. On or about January of 2007 and continuously thereafter, while meeting the minimum

standards of her employer, the defendant willfully discriminated against plaintiff because of her age by:

    A. In January of 2007, OCHOA's job title was changed from Program Manager to Program Coordinator thereby demoting her;

    B. In January of 2007, OCHOA's her supervisor "targeted her telecommuting privileges and thereafter her telecommuting privileges were terminated;

    C. In March of 2007, OCHOA's supervisor directed her to relocate from her desirable work location to a less desirable work location;

    D. Since February of 2007, and continuing, OCHOA's supervisor has ignored all requests by her for training and re-training; and

    E. OCHOA in doing I-band work was receiving unequal pay for at H-bank pay.

    Plaintiff reached  years of age 51 before January of  2007.

34.   As a result of Defendant's actions, the Plaintiff has been deprived of her wages and employment benefits.

35.  The Defendant's conduct was at all times willful and wanton.

## PROCEDURAL FACTS

36. Plaintiff filed a discrimination charge against Defendant with the Equal Employment Opportunity Commission Office of Federal Operations (EEO). That charge was timely filed under the internal policy and procedures of DOT and after filing went through various stages of litigation.

37. On May 22, 2008, Plaintiff was sent a notice from the DOT of her right to bring this action (see Exhibit "A"), and Plaintiff timely filed this action.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (Title VII-RETALIATION)

38.  OCHOA realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

7

39.  DOT has intentionally retaliated against OCHOA, based upon filing her

prior complaints and subsequent settlement of charges brought under complaint #4-01-

409FAA. Thereafter, Defendants agents created a hostile, retaliatory and offensive work,

hostile and retaliatory environment by:

> A. In January of 2007, OCHOA's job title was changed from
> Program Manager to Program Coordinator thereby demoting her;

> B. In January of 2007, OCHOA's her supervisor "targeted her telecommuting
> privileges and thereafter her telecommuting privileges were terminated;

> C. In March of 2007, OCHOA's supervisor directed her to relocate from her
> desirable work location to a less desirable work location;

> D. Since February of 2007, and continuing, OCHOA's supervisor has
> ignored all requests by her for training and re-training; and

> E. OCHOA in doing I-band work was receiving unequal pay for at H-bank pay.

All in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-

e et seq, as amended by, inter alia the Civil Rights Act of 1991.

40.  By reason of the retaliation of DOT, OCHOA has suffered a loss of

earnings and benefits, in addition to suffering great pain, humiliation and mental

anguish, all to her damage.

41.  Further, said action on the part of the Defendant was done with malice and

reckless disregard for Plaintiffs' protected rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. Declare the conduct engaged in by Defendant to be in violation of Plaintiff's rights;

2. For injunctive relief, including but not limited to relief required to make Plaintiff

whole so there are no future retaliations or blocked opportunities and for any losses

8

caused by the violations of Defendant;

   3.  For compensatory damages of $300,000.00 for each count set forth above;

   4.  For costs of suit, including reasonable attorney's fees and expert fees, pursuant to

42 U.S.C.A § 12117(a), which incorporates the remedies set forth in Title VII of the

Civil Rights Act of 1964, Title 42 U.S.C.A. § 2000e-5(k); and

   5. For such other and further relief as the court deems proper.

MAGDALENA. OCHOA

BY:/S/ **Michael T. Smith**
Michael T. SMITH
Trial Attorney

Michael T. Smith
6180407IL
440 W. Irving Park Road
Roselle, IL 60172
(847) 895-0626

**U.S. Department of
Transportation**

1200 New Jersey Ave., S.E.
Washington, D.C. 20590

Office of the Secretary
of Transportation

May 22, 2008

## FEDERAL EXPRESS #7984 4706 4535

RE:    DOT Complaint No. 2007-21082-FAA-04

Ms. Magdalena Ochoa
c/o Michael T. Smith, Esq.
Law Offices of Michal T. Smith & Associates
Attorneys at Law
440 W. Irving Park Road
Roselle, IL  60172

Dear Ms. Ochoa:

This transmits the U.S. Department of Transportation's final agency decision
in the subject complaint alleging discrimination filed against the Federal
Aviation Administration.  A finding of no discrimination is made.  If you are
dissatisfied with this decision, you have the following appeal rights:

--      Within 30 calendar days of your receipt of this final decision, you
        may appeal this decision to the Director, Office of Federal
        Operations, Equal Employment Opportunity Commission, P.O.
        Box 19848, Washington, D.C. 20036.  (EEOC Form 573, Notice
        of Appeal/Petition, is enclosed for this purpose.)

--      Within 90 calendar days of your receipt of this final decision or
        after 180 days from the date of filing an appeal with the EEOC
        if there has been no final decision by the EEOC, you may file a
        civil action in an appropriate U.S. District Court.  The Court, at
        your request, may appoint and authorize legal counsel in
        circumstances that it deems just without the payment of fees,
        costs or security.  The granting or denial of the request is within
        the sole discretion of the Court.

You must name the person who is the official agency head and his or her
official title as the defendant in your appeal.  In your case, you must name
the following official as the defendant:

                    The Honorable Mary E. Peters
                    Secretary of Transportation
                    1200 New Jersey Avenue S.E.
                    Washington, D.C. 20590

## FINAL AGENCY DECISION
## COMPLAINT DOT NO. 2007-21082-FAA-04

This is the final Departmental decision in the discrimination complaint filed by Ms. Magdalena Ochoa [hereinafter *the Complainant*] against the Federal Aviation Administration (FAA), U.S. Department of Transportation (DOT) [hereinafter *the Agency*].

### I.    CLAIM

Whether Complainant was discriminated against based on her race (Hispanic), national origin (Mexican), sex (female), age (51) and in reprisal for her prior participation in protected activity:

A.    When in January 2007, her job title was changed from Program Manager to Program Coordinator;

B.    When on January 21, 2007, her telecommuting privileges were terminated;

C.    When in March 2007, her supervisor directed her to move her work station from a preferred window seat to a less desirable work location;

D.    When Since February 2007, her supervisor has ignored her requests for training; and

E.    Because she is receiving H-band pay, although she is performing I-band duties.

### II.    PROCEDURAL BACKGROUND

| | |
|---|---|
| Alleged Discriminatory Actions Occurred: | January 11, 2007 and continuing |
| Initial Counseling Contact Occurred: | January 17, 2007 |
| Notice of Right to File Issued: | April 17, 2007 |
| Formal Complaint Filed: | May 1, 2007 |
| Formal Complaint Accepted: | May 25, 2007 |
| Investigation Conducted: | May 1 2007 - January 24, 2008 |
| Report of Investigation (ROI)[1] Issued: | January 29, 2008 |
| Complainant's EEOC Hearing Request: | February 15, 2008 |
| Complainant's Withdrawal of Hearing Request: | April 8, 2008 |
| EEOC's Order of Dismissal: | April 8, 2008 |

---

[1] ROI = Report of Investigation, Ex(s). = Exhibit(s), p(p). = page(s).

$EXhibT "A"$

Subject: Ochoa FAD, 2007-21082-FAA-04                                        2

This decision is being issued pursuant to Title 29, <u>Code of Federal Regulations</u> <u>(C.F.R.)</u>, § 1614.110(b).

## III.   FACTUAL BACKGROUND

### A.   General

Complainant (Hispanic, Mexican, female, DOB: December 24, 1955) is an Electronics Technician, FV-856-H, Engineering Services, Operations Support Center, Air Traffic Organization, Great Lakes Regional Office, FAA, Des Plaines, Illinois. She has held that position since 2004 or 2001?. Her first level supervisor is John A. Welzenbach (Caucasian, U.S., male, DOB: June 6, 1964), Manager, Operations Support Center, Engineering Services. Her second level supervisor is Thomas A. Smith (race, national origin, age and position unknown). (ROI Exs. F1a, F5a).

Complainant filed EEO Complaint No. 4-01-4089 on June 25, 2001. She also participated as a witness in the EEO investigation of a coworker on or about August 1, 2007. (ROI Exs. F1a, G2, p. 3).

Mr. Welzenbach testified that he had no knowledge of any prior EEO complaints at the time Complainant filed the present complaint. (ROI Ex. F5).

### B.   Incident 1: In January 2007, Complainant's job title was changed from Program Manager to Program Coordinator.

#### 1.   Complainant's Testimony

Complainant states Mr. Welzenbach became her supervisor on December 6, 2006. Mr. Welzenbach asked Complainant to explain her accomplishments, and he asked why she was spending so much time on reviewing orders and directives. He then ordered her to stop making this a full-time task. Complainant states she told Mr. Welzenbach, in her role as Test Equipment Program Manager, she needed to review orders and directives to be well informed of the programs. Mr. Welzenbach replied that she was not a Program Manager, but more of a Coordinator. On another occasion, Mr. Welzenbach told Complainant that the term, "Program Manager" was too loosely used. Complainant contends Mr. Welzenbach changed her title from Program Manager to Program Coordinator. She further contends her counterparts across the nation at the legacy Regional level are called Program Managers. Complainant contends, by changing her title, Mr. Welzenbach has demoted her. (ROI Ex. F1a, p. 26).

### 2.    Management's Testimony

John A. Welzenbach, Manager, Operations Support Center, confirmed that he
became Complainant's first level supervisor on December 10, 2006, when he was
reassigned as Manager to the newly created Operations Support Center.
Mr. Welzenbach denied that Complainant's job title or position duties changed in
January 2007.  He described Complainant's position duties as of January 2007 as
"reviewing test equipment requests and assisting field level technicians with
replacement of test equipment.  She was a property custodian for 8071 (the Cost
Center), she was handling disposition of property for the Cost Center."
Mr. Welzenbach states the office was in transition from the Legacy organization to
the Air Traffic Organization.  (ROI Ex. F5a, pp. 4, 5).

Mr. Welzenbach states Complainant's job title never changed, and he never
communicated to her that she was either a Program Manager or a Program
Coordinator.  He states he asked each employee to provide copies of their work
schedules.  Complainant, as well as other employees, provided the information in a
timely manner.  He held meetings with all employees in the work unit to gain a
better understanding of duties, requirements, and assignments.  (ROI Ex. F5a, p.
5).

Mr. Welzenbach testifies, on January 11, 2007, he began an informal meeting with
Complainant to discuss her work assignments.  During this discussion she
attempted to engage him in a discussion regarding her job title.  When she stated
she was a Program Manager, Mr. Welzenbach told Complainant that he did not
think there were any Program Managers within his section, and it was his
understanding that Complainant's position was Electronics Technician.  He denies
that he made any changes to any job title of Complainant.  He states Complainant's
latest SF-50, Notification of Personnel Action, notes her position as "Electronics
Technician."  Mr. Welzenbach states no other employees' position titles were
changed within his section.  (ROI Ex. F5a, pp. 5, 6).

### 3.    Other Evidence

According to a Notification of Personnel Action (SF-50) dated January 7, 2007,
Complainant's official position is Electronics Technician, FV-0856.  (ROI Ex. F2a,
Tab 2, p. 1).

### 4.    Complainant's Rebuttal Testimony

Complainant claims the functional duties of her position are the same as those of
other employees holding the same position as hers across the country and they are
referred to as TE Program Managers.  She contends everyone has a job title on the
SF-50, and one or more "functional titles."  She states she is also called a Custodian

Delegate, a Configuration Manager, a Facility Shut Down Coordinator, and Air
Space Duties Coordinator. Complainant contends Mr. Welzenbach's insistence in
demoting her value as the Test Equipment Program Manager was in line with the
lower pay band that she received in comparison to others performing the same
duties in the programs. (ROI Ex. F1d, p. 6).

C.     Incident 2: On January 21, 2007, Complainant's telecommuting
      privileges were terminated.

1.     *Complainant's Testimony*

Complainant states her telecommuting arrangements, which consisted of
telecommuting two days each week, were approved by Maureen Clark, her previous
supervisor, in the middle of November 2006, and they agreed to revisit the
telecommuting agreement after December 31, 2006. However, after
Mr. Welzenbach became her supervisor in December 2006, he immediately
"targeted" her telecommuting work privilege. Mr. Welzenbach terminated
Complainant's telework privilege from one day to the next and stopped it on
January 21, 2007. (ROI Ex. F1a).

Complainant contends Mr. Welzenbach did not enforce the management option [to
approve or not approve] with the other two Caucasian female employees. He did
not scrutinize their work or that of other employees in the section.

2.     *Management's Testimony*

John A. Welzenbach, Manager, Operations Support Center, testifies he is the
decision maker for telecommuting requests within his section. He states when he
became Manager of the Operations Support Center, three employees were
telecommuting two days each week: Cheri Walter, Regina Sabatini, and
Complainant. (ROI Ex. F5a, p. 7).

Mr. Welzenbach states he terminated Complainant's telecommute because there
was no clear, deliverable that had a benefit to the Agency or to her work
assignments. She offered no progress reports, and Mr. Welzenbach received a
report that two training classes were cancelled because of Complainant's inactivity.
Based on no reports of activity, Mr. Welzenbach had no confidence that she was
managing her time properly and doing the work. He states he had asked for
documentation of Complainant's work during her telecommuting prior to a January
8, 2007 meeting with Complainant and he never received anything from her. (ROI
Ex. F5a, p. 7).

Mr. Welzenbach states both Ms. Walter and Ms. Sabatini provided weekly and
monthly reports, and their work was measurable and can be documented in the

OE/NRA software. Mr. Welzenbach states Sam Lakhani, Electronics Technician, was approved to telecommute in May 2007. (ROI Ex. F5a, p. 8).

### 3.   Other Testimony

Regina Sabatini (White, American, female, DOB: July 1, 1964, EEO activity unknown), Electronics Technician, states Mr. Welzenbach granted her request to telecommute in April or May 2007, based on specific dates and assignments to be performed. She telecommutes two days a week. On those days she retains an access data for all her actions, and transmits portions of this database to Mr. Welzenbach. (ROI Ex. F7, p. 2).

Cheri Walter (Caucasian, U.S., female, DOB: August 6, 1971, no EEO activity), Airspace Program Manager,[2] testifies she telecommutes two days a week. She states all the information she needs to do her job is on-line and her job lends itself to telecommuting. The cases are entered in an on-line format and the program allows her to look at a map and to pull it up in relationship to the equipment. (ROI Ex. F8).

Saleem A. Lakhani (Asian, Indo-Pakistani, male, DOB: September 17, 1964, no EEO activity), Electronics Technician, testifies he is eligible to telecommute because his program functions make it possible for him to work from the off-site location without any adverse impact to the core goals of the Airspace program. Mr. Welzenbach approved his request to telecommute in the summer of 2007. (ROI Ex. F9, p. 2).

### 4.   Other Evidence

In an undated Memorandum, John A. Welzenbach wrote:

> After reviewing the product from the work assignments identified in the FAA Telework Agreement dated November 13, 2006, I must request termination. During a discussion of these work assignments, you were asked to present the work product from "Review Draft Order 6200.4 for comments to the National Program Manager." No comments were provided. In discussing the time required to "Review Order 4650.21," we could not reach agreement on the duration of this assignment. Finally, the assignment "Correspondence Courses" shows no progress. You were enrolled in three Correspondence Courses on the date of this agreement. On December 22, 2006 your

---

[2] According to the EEO Investigator's note, Ms. Walter is technically an Electronics Engineer. (ROI Ex. F8, p. 8).

enrollment from these courses has been withdrawn due to inactivity.[3] When asked about the remaining courses on January 8, 2007, you indicated that no lessons or exams had been submitted.

Telecommuting is a management option. As your supervisor, I am formally notifying you that as of January 21, 2007, the FAA Telework Agreement is terminated.

(ROI Ex. F1a, Tab 5).

According to LWS 8.19 - FAA Telework Program, teleworking is a manager-approved work option; therefore, employees have no automatic right to continue in the program in the event of a change of manager or position. (ROI Ex. F2a, Tab 4).

### 5. *Complainant's Rebuttal Testimony*

Complainant states Mr. Welzenbach terminated her telecommuting benefit when be became her manager and the time she was under his supervision was not enough to prove her efficiency or productivity in the telecommuting program. Mr. Welzenbach did not offer any alternatives, instead he abruptly terminated this benefit, while others were allowed to telecommute. (ROI Ex. F1d, p. 6).

C.    Incident 3:  On March 2007, Complainant's supervisor directed her to move her work station from a preferred window seat to a less desirable work location.

### 1.    *Complainant's Testimony*

Complainant states Maureen Clark, her former supervisor, approached her on February 5, 2007, and offered her the window seat that William Helm had vacated upon his reassignment to Atlanta, Georgia. On March 8, 2007, Mr. Welzenbach agreed that Complainant could "bump" Regina Sabatini, who was coming back from a 4 or 5 year detail, who had sat there prior to Mr. Helm. Complainant moved to the window seat on March 9, 2007. Two weeks later Mr. Welzenbach asked her to move back to her original seat, and told her he did not remember telling her she could move to the window seat. Another employee, Sam Lakhani, offered to move to another window seat and let Complainant have his window seat. However, Mr. Welzenbach said Complainant had to move to her original seat. (ROI Ex. F1a, p. 44, 49).

---

[3] In a December 22, 2006, e-mail to Complainant from Correspondence Study Administrator, Complainant was notified that her enrollment in course # 14010 (Briefing and Presentation Techniques) had been withdrawn because there had been no activity for 6 months or the extension date for the enrollment had expired. (ROI Ex. F2a, Tab 3, p. 1).

Complainant contends Mr. Welzenbach's refusal to allow her to move to a window seat was retaliation for her having filed an Office of Inspector General Hot Line complaint on March 21, 2007.[4]

### 2. Management's Testimony

John A. Welzenbach, Manager, Operations Support Center, testifies, when he became Manager, employees were already assigned their seats and he made no seat reassignments. He states Complainant was in an aisle cubicle across from Al Sampra. He further states it is his understanding that Complainant moved to another cubicle while he was out of the office in March 2007. He further testifies he did not give Complainant permission to move from her cubicle to a vacant cubicle near a window. Mr. Welzenbach states, before he left on leave he had set a date for Regina Sabatini to return from her detail to her assigned cubicle. (ROI Ex. F5a, p. 9).

Mr. Welzenbach states he learned on March 21, 2007, that Complainant had relocated herself to the seat that was assigned to Ms. Sabatini, who was on temporary assignment to another location. As Mr. Welzenbach was actively arranging for Ms. Sabatini's return to the office, and Complainant had relocated without prior coordination with him, he informed Complainant that she would need to return to her previously assigned work station. Complainant then told Mr. Welzenbach that Sam Lakhani would have to move because Maureen Clark had made arrangements for her to relocate. Complainant returned to her assigned cubicle about a week later, on about March 28, 2007. (ROI Ex. F5a, p. 10).

### 3. Other Testimony

Maureen R. Clark (Caucasian, Irish/German, female, DOB: February 5, 1953), Special Projects Associate Program Manager, testifies Complainant requested permission to move to Sam Lakhani's cubicle, after he was selected for a position in Ft. Worth, Texas. Thinking Mr. Lakhani would be leaving soon, Ms. Clark told Complainant she could have his cubicle once he left. However, Mr. Lakhani then declined to accept the position, and he did not move. Ms. Clark testifies she never told Complainant she could have Mr. Helm's cubicle. Ms. Clark further testifies she never spoke to Complainant about a move after June 21, 2006. (ROI Ex. F6).

Regina Sabatini, Electronics Technician, testifies, she was on loan to the O'Hare Modernization Program when she was told Tom Smith required that all employees return to their positions of record. Mr. Welzenbach told her to move back to her

---

[4] Complainant states her Hot Line complaint contained allegations of abuse of leave, misuse of the telecommuting program, falsification of travel vouchers, and that she did not know who her supervisors were for obtaining leave approval. (ROI Ex. F1a, p. 49).

Subject: Ochoa FAD, 2007-21082-FAA-04                                          8

cubicle and Complainant was in it. Ms. Sabatini offered to move elsewhere, but Mr. Welzenbach told her to return to her original cubicle, to which she had been assigned since construction of the new wing, approximately 7 years ago. (ROI Ex. F7).

Saleem A. Lakhani, Electronics Technician, testifies in late 2006, Maureen Clark told Complainant she could have his window cubicle because he had applied for a position in Fort Worth, Texas. However, he decided not to accept the position. Complainant moved herself to Regina Sabatini's cubicle. About two weeks later Ms. Sabatini came back from an extended detail. Mr. Lakhani states Mr. Welzenbach politely asked Complainant to vacate Ms. Sabatini's cubicle. Complainant moved to a vacant desk. (ROI Ex. F9, p. 3).

Mr. Lakhani states, according to the PASS contract, employees with the most seniority are eligible to receive a desired vacated seat. This policy applies when there is a conflict between two or more employees who want the same seat. Mr. Lakhani states he offered to move to another cubicle to enable Complainant to have his cubicle. However, Mr. Welzenbach told Mr. Lakhani he did not need to move and he would take care of the matter. (ROI Ex. F9, p. 4).

### 4.    Other Evidence

In an April 12, 2007, e-mail to Complainant, Mr. Welzenbach wrote:

> Based on our discussion this morning, I am open to you relocating to one of our open desks, provided there are no impacts to other employees. I do ask that you consult with me prior to relocating to another desk other than your assigned one, adjacent to Al Sampra.

(ROI Ex. F1a, p. 58).

### 5.    Complainant's Rebuttal Testimony

Complainant states Mr. Welzenbach's actions were taken in retaliation for her having filed an Inspector General complaint. She further states Mr. Welzenbach had given her permission to move and that she had seniority over Ms. Sabatini. Two weeks later Mr. Welzenbach claimed he had been instructed by Human Resources to give the seat to Ms. Sabatini and he did not remember telling Complainant to move. Both Ms. Sabatini and Mr. Lakhani offered to move to allow her to have Ms. Sabatini's seat; however, Mr. Welzenbach declined their offers. (ROI Ex. F1d, p. 6).

D.    Incident 4: Since February 2007, Complainant's supervisor has
        ignored her requests for training.

1.    *Complainant's Testimony*

Complainant contends Mr. Welzenbach has purposely ignored her requests for
training and "maliciously sabotaged" her eligibility by missing deadlines.
Complainant stated Mr. Welzenbach responded to her requests only after she sent
an e-mail to his manager. Mr. Welzenbach has even questioned her correspondence
course requests, saying, 'I don't even know why you are taking these courses," when
she applied for one in February 2007. (ROI Ex. Fa1, p. 49).

2.    *Management's Testimony*

John A. Welzenbach, Manager, Operations Support Center, testifies that the
training the Complainant requested was not technical training. One course she
requested was a for a Contracting Management Officer function, a function
Complainant did not perform. (ROI Ex. F5a, p. 12).

The other requested training was for the National Hispanic Coalition of Federal
Aviation Employees (NHCFAE)and her name had not been submitted for attending.
Mr. Welzenbach informed Complainant that he could not fund travel for her
attendance at this conference, and before he could approve administrative leave for
her, the NHCFAE would have to acquire confirmation from the Washington
Learning Office, in that over half of the conference was a training event.
Complainant then inquired with the Regional chapter Director, who confirmed the
administrative leave requirement. (ROI Ex. F5a, p. 13).

Mr. Welzenbach further states Complainant had not submitted an Individual
Development Plan (IDP) to him or to her prior supervisor, Maureen Clark. He
states Tom Smith, his supervisor, asked Complainant to submit an IDP in April
2007. However, she has not done so. (ROI Ex. F5a).

Mr. Welzenbach explains that there is mandatory training done every year with all
employees, such as Security Awareness, Risk management, Ethics Training, and
Financial Disclosure. Complaint received this training, except for Financial
Disclosure, which she does not have to do. Mr. Welzenbach states he does not
receive many training requests, as most employees are journey-level. He states
Tom Stanosis and Ed Johnson, both Engineers, went to training courses, one for
Fiber Optics and one for Distance Measuring Equipment. (ROI Ex. F5a).

Mr. Welzenbach testifies, since February 2007, other employees have requested and
have been granted administrative leave for their organizations' annual training
conferences. He approved administrative leave for Sam Lakhani to attend the

Subject: Ochoa FAD, 2007-21082-FAA-04

Great Lakes Pacific Asian American Coalition national training conference. Vicki Richards (race, national origin, sex, age, prior EEO activity unknown) and Cheri Walter attended the Technical Women's Organization national training conference. Mr. Lakhani, Ms. Richards and Ms. Walter provided Mr. Welzenbach with letters from their respective organizations and each requested administrative leave. None of their travel expenses were funded by Mr. Welzenbach's organization. Mr. Welzenbach denied Andy McMurry's request to attend a seminar in Singapore or Hong Kong, because it could not be justified as being relevant to his job. (ROI Ex. F5a).

     3.   *Complainant's Rebuttal Testimony*

Complainant contends Mr. Welzenbach's testimony is erroneous in that she is in charge of property in the section and she was requesting training in this area. She further contends an employee's name does not have to be on any list in advance to attend the National Hispanic Coalition. (ROI Ex. F1d, p. 7).

    E.   <u>Incident 5: Complainant is receiving H-band pay, although she is performing I-band duties.</u>

     1.   *Complainant's Testimony*

Complainant contends she performs the same duties as other employees in the office who are paid at an I-band level. She claims she has been performing these duties since November 2001. When she inquired about the disparity in pay, she was told that the work has lost complexity since she acquired the duties. Complainant states William Helm, Electronics Technician, Atlanta, Georgia, and Robert Swan, Electronics Technician, have held her position and were eventually promoted to the I-band level. (ROI Ex. F1a, p. 53)

     2.   *Management's Testimony*

John A. Welzenbach, Manager, Operations Support Center, testifies Complainant's work is assigned based on her position as an H-Band employee and she has not been assigned I-Band work. He states he has never assigned work to Complainant that could meet the full scope of Technical Level 4 (I-Band). (ROI Ex. F5a, p. 14).

Mr. Welzenbach states Complainant has never requested a desk audit of her position duties. However, the work assignments given Complainant since December 10, 2006, were reviewed and are commensurate with H-Band level work. She typically resolves test equipment replacement and calibration scheduling issues with the service area. She receives general guidance on these assignments from a Senior Coordinator, Maureen Clark. In addition, Complainant has been assigned to provide recommendations to Mr. Welzenbach on improving and consolidating test

Subject: Ochoa FAD, 2007-21082-FAA-04

equipment responses and customer service. Both are assignments commensurate with the collective bargaining agreement for H-Band. (ROI Ex. F5a, p. 14).

Mr. Welzenbach testifies neither Mr. Helm nor Mr. Swan worked for him and he does not know what work they were assigned or what grades they were when the did the work. (ROI Ex. F5a, p. 14).

### 3.     *Complainant's Rebuttal Testimony*

Complainant continues to contend she has performed the duties of the Test Equipment Program Manager and Configuration Manager, along with William Helm, who was an I-Band employee. She further contends Mr. Welzenbach's statement that she works under the general guidance of Maureen Clark is false and intentionally misleading. She states she was performing the duties of the Test Equipment and Configuration Manager under two former supervisors and later under Maureen Clark, who would come to her with questions on TE policy and procedures. (ROI Ex. F1d, p. 7).

## IV.     **APPLICABLE LAW**

The Complainant is alleging that she was subjected to disparate treatment because of her race (Hispanic), national origin (Mexican) sex (female) and reprisal for prior EEO activity in violation of <u>Title VII of the Civil Rights Act of 1964</u>, as amended, and because of her age (51, DOB: December 24, 1955) in violation of the <u>Age Discrimination in Employment Act of 1967</u>, as amended. As a general matter, in the absence of direct evidence of discriminatory intent, a three-part analysis is applied. Initially, the Complainant has the burden of establishing, by a preponderance of the evidence, a *prima facie* case of discrimination, which, if unrebutted, would support an inference that the Agency's actions resulted from discrimination. <u>McDonnell- Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); <u>Furnco Construction Corp. v. Waters</u>, 438 U.S. 567, 576 (1978).

To establish a *prima facie* case of unlawful discrimination on the basis of race, national origin, sex and/or age, the Complainant must establish that: (1) she is a member of the protected classes; (2) she was subjected to an adverse employment action; and (3) similarly situated employees outside her protected classes were treated more favorably in like circumstances. <u>Moore v. City of Charlotte, N.C.</u>, 754 F.2d 1100, 1105-06 (4th Cir. 1984), *cert. denied,* 472 U.S. 1021 (1985); <u>Mosely v. General Motors Corp.</u>, 497 F. Supp. 583, 589 (E.D. Mo. 1980), *aff'd* 691 F.2d 698 (3rd Cir. 1982); <u>Worth v. United States Steel Corp.</u>, 616 F.2d 698 (3rd Cir. 1980). [5] The

---

[5] In order for employees to be considered similarly situated, all relevant aspects of the Complainant's work situation must be identical or nearly identical to those of the comparative employees who he alleges were treated differently. <u>Smith v. Monsanto Chemical Co.</u>, 770 F.2d 719, 723 (8th Cir. 1985).

Subject: Ochoa FAD, 2007-21082-FAA-04                                    12

Complainant may also meet this burden by presenting other evidence that raises an inference of discrimination. Potter v. Goodwill Industries of Cleveland, 518 F.2d 864 (6th Cir. 1976); Furnco, at 576; Alcala v. Department of the Treasury, EEOC Decision No. 01975949 (March 7, 2000).[6]

In order to establish a *prima facie* case of reprisal, the Complainant must show that: (1) she engaged in a statutorily protected activity, *i.e.*, opposed unlawful discriminatory employment practices or participated in the EEO process; (2) her employer was aware of her previous protected activity; (3) subsequently, her employer took an adverse employment action against her; and (4) the adverse employment action followed the protected activity in such a time and manner as to raise an inference of retaliation. Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir. 1987); Downing v. U.S. Postal Service, EEOC Decision No. 01822326 (1983); Cohen v. Fred Meyers, Inc., 686 F.2d 793, 796 (9th Cir. 1982).

If the Complainant is successful in establishing a *prima facie* case, the burden of production then shifts to the Agency to articulate a legitimate, non-discriminatory reason for the challenged actions. McDonnell Douglas, at 792. The Agency need only produce admissible evidence sufficient to allow the trier of fact rationally to conclude that the Agency's actions were not based on unlawful discrimination. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-256 (1981). The Agency must, however, frame the factual issue with sufficient clarity so that the complainant will have a full and fair opportunity to demonstrate pretext. Should the agency meet its "burden of production," the presumption of discrimination created by the *prima facie* case "drops from the case." Id.

The Complainant must then prove by a preponderance of the evidence that the legitimate reasons proffered by the employer were not its true reasons, but were a pretext for discrimination, either because the Agency more likely had a discriminatory motive, or because the stated reasons lacked credibility. Burdine, at 256. The more idiosyncratic or questionable the agency's decision, the greater likelihood of exposing it as a pretext. Loeb v. Textron, Inc., 600 F.2d 1003, 1012 n. 6 (1st Cir. 1979). Allegations of pretext may be supported by evidence of discriminatory statements, past dissimilar treatment, statistical evidence, or unequal applications of agency policy. McDonnell-Douglas. While the presence of

---

[6] To establish a *prima facie* case based on age, it is not necessary for the Complainant to show that a comparative individual is outside the protected age group (i.e., is under age 40). O'Connor, at 312; Daniels v. Department of the Air Force, EEOC Decision No. 03970009 (July 31, 1997). Under the ADEA, the Complainant's ultimate burden is to establish that age was a determining factor in management's decision. Fodale v. Department of Health and Human Services, EEOC Decision No. 05960344 (October 16, 1998), *citing* Johnson v. United States Postal Service, EEOC Decision No. 05910560 (September 17, 1991); Loeb v. Textron, Inc., 600 F.2d 1003, 1019 (1st Cir. 1979).

errors, mistakes or questionable credibility permit a finding of discrimination, such a finding is not required if evidence is insufficient to show discriminatory motive or intent. St. Mary's Honor Center v. Hicks, 509 US. 502, 519 (1993). A *prima facie* case of discrimination, combined with sufficient evidence for a reasonable fact-finder to reject the agency's nondiscriminatory explanation for its decision, is adequate to sustain a finding of liability for intentional discrimination. Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097 (June 12, 2000).

## V.   **ANALYSIS**

A.   *Prima Facie Case*

Complainant met the first element of her *prima facie* case of discrimination in that she is Hispanic, Mexican, female and age 51. The remaining elements are addressed below for each incident:

> Regarding Incident 1, Complainant's job title was changed from Program Manager to Program Coordinator, which arguably is an adverse employment actions. However, Complainant did not identify any employees whom she claimed were treated more favorably under same or similar circumstances. She made a general statement that her counterparts across the nation are called Program Managers. However, she provided nothing to show that their official titles are other than Electronics Technician.

> Regarding Incident 2, Complainant's telecommuting privileges were terminated, Complainant claimed Cheri Walter (Caucasian, U.S., female, DOB: August 6, 1971) and Regina Sabatini (White, American, female, DOB: July 1, 1964) were treated more favorably in that they were permitted to telecommute two days each week. However, evidence shows that Ms. Walter and Ms. Sabatini were not similarly situated to the Complainant in terms of work product. The duties of their positions enabled them to successfully telecommute and they transmitted their work products to Mr. Welzenbach. Complainant, however, failed to present a satisfactory work product to Mr. Welzenbach. Ms. Walter and Ms. Sabatini were not similarly situated to Complainant for comparison purposes.

> Regarding Incident 3, Complainant's supervisor directed her to move her work station from a preferred window seat to a less desirable work location, Complainant did not identify similarly situated employees who were treated more favorably under same or similar circumstances.

> Regarding Incident 4, Complainant's supervisor ignored her requests for training, Complainant did not identify similarly situated individuals who received more favorable treatment.

Regarding Incident 5, Complainant's claim that she is receiving H-Band pay although she is performing I-Band duties, she identified William Helm (race, national origin, sex, age, EEO activity unknown) and Robert Swan (race, national origin, sex, age, EEO activity unknown) as similarly situated employees who were treated more favorably than she was treated. However, the evidence reveals that Mr. Helm and Mr. Swan have never worked for Mr. Welzenbach. Therefore, they are not appropriate comparative employees.

As Complainant has failed to identify individuals who were treated more favorably with respect to any of the incidents complained of in this case, she has not established a *prima facie* case of race, national origin, sex, or age discrimination.

Complainant met the first element of her *prima facie* case of reprisal in that she engaged in statutorily protected activity when she filed an EEO complaint in June 2001, and participated as a witness in the EEO investigation of a coworker on or about August 1, 2007. However, Complainant has failed to satisfy the second element in that Mr. Welzenbach testified he was unaware of any prior EEO activity. She has also failed to satisfy the third element in that she was not subjected to an adverse employment action.

Finally, she has failed to establish a causal connection between her protected activity and any of management's actions. Complainant stated she filed an EEO complaint in June 2001, approximately six years prior to the actions complained of in the present complaint. We find that the time lapse between Complainant's prior EEO complaint and the actions complained of in the present complaint negates any inference of a causal connection. *See* Webster v. U. S. Postal Service, EEOC No. 018442497 (1986) (one-year time lapse too great to draw a causal connection between protected activity and the alleged adverse action); Kline v. City of Kansas City, 175 F.3d 660 (8th Cir. 1999); Filipovic v. K & R Express Sys., 176 F.3d 390 (7th Cir. 1999) (four-month time lapse too great to draw a causal connection between the plaintiff's prior EEO activity and his termination). We note that the passage of time between the protected activity and the actions at issue is only one factor to be considered in determining whether an inference of retaliation is warranted. The mere passage of a significant amount of time is not sufficient to dissipate the inference if there are other factors present. In this case there are no other factors present that would create an inference of retaliation. Mr. Welzenbach testified he had no knowledge of her prior EEO complaints.

Complainant further claims reprisal for her participation as a witness in a coworkers EEO complaint on or about August 1, 2007. However, it is noted that the actions Complainant claimed were taken in reprisal for her protected activity allegedly occurred during January and February 2007, some seven months prior to

Subject: Ochoa FAD, 2007-21082-FAA-04

Complainant's participation in her coworkers complaint. Therefore, no causal connection can be inferred.

As Complainant has failed to satisfy all four elements, she has not established a *prima facie* case of reprisal.

### B.  *Management's Legitimate, Nondiscriminatory Reasons for Its Actions*

Although the Complainant has not met her *prima facie* burdens, management articulated the following legitimate, nondiscriminatory reasons for its actions:

Regarding Incident 1, the evidence clearly supports a finding that Complainant's job title was not changed. Mr. Welzenbach testified Complainant attempted to engage him in a discussion regarding her job title. Complainant stated she was a Program Manager and Mr. Welzenbach told Complainant he did not think there were any Program Managers within his section. Complainant's Form SF-50 designates her position as Electronics Technician.

Regarding Incident 2, Mr. Welzenbach testified he terminated Complainant's telecommuting privileges because there was no clear, deliverable that had a benefit to the Agency or to her work assignments. He stated he asked for documentation of Complainant's work during her telecommuting prior to a January 8, 2007 meeting, and he never received anything from Complainant.

Regarding Incident 3, Complainant moved to a vacant cubicle that was assigned to Ms. Sabatini, who was out of the office. When Ms. Sabatini returned to the office, Complainant was asked to vacate her cubicle. Complainant was then given an opportunity to choose among several vacant work locations.

Regarding Incident 4, Mr. Welzenbach stated Complainant's request for training in a Contracting Management Officer function was not related to her job. Therefore, it was not approved. A request for participation in the National Hispanic Coalition of Federal Aviation Employees was not approved because the Complainant's name had not been submitted for attending the conference. However, Mr. Welzenbach told Complainant if she could be confirmed for attendance, he would approve administrative leave for her.

Regarding Incident 5, Mr. Welzenbach stated Complainant's work is assigned based on her position as an H-Band employee and she has not been assigned I-Band work. Mr. Welzenbach further stated Complainant has never requested a desk audit of her position duties. However, her work assignments since December 10, 2006 were reviewed and were found to be commensurate with H-Band level work.

Subject: Ochoa FAD, 2007-21082-FAA-04

C.    *Pretext*

To prevail in this matter, the Complainant must now present evidence to show that the articulated reasons for the Agency's actions were not the true reasons but were merely a pretext for intentional discrimination. Pretext may be demonstrated by showing "such weaknesses, impossibilities, inconsistencies, incoherencies, or contradictions in the agency's proffered reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence and then infer that the employer did not act for the asserted non-discriminatory reason. Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997). A review of the record indicates that the Complainant offered nothing more than rank speculations and conclusory allegations. These efforts are insufficient in order to establish pretext. Morgan, *supra*. The complainant's self-serving, improbable speculation and conclusions will not support any finding that he has carried his burden. See Medina-Munoz v. R.J. Reynolds, 896 F.2d 5 (1st Cir. 1990); Jones v. Gerwens, 874 F.2d 1534 (11th Cir. 1989).

The preponderance of the evidence clearly supports a conclusion that the Complainant has failed to establish a *prima facie* case of race, national origin, sex and/or age discrimination, and she has failed to establish a *prima facie* case of reprisal. Moreover, she has failed to submit any evidence into the record that the reasons articulated by the Agency are not the true reasons for its actions. Complainant offered nothing to suggest that management's decisions in any of the complained of actions were related to her race, national origin, sex, age or prior EEO activity. Management officials unequivocally denied that its decisions were motivated by Complainant's protected status. Simply stated, the Complainant has not met the burden of establishing that the Agency's articulated reasons were not credible or were a pretext to mask prohibited discrimination.

Finally, Complainant has not presented any evidence beyond her bare allegation to indicate that agency officials harbored a discriminatory animus toward members of her protected classes. .

## VI.    **CONCLUSION**

Therefore, it is the final decision of the U. S. Department of Transportation that a finding of no discrimination is made in this matter.